## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## AT PADUCAH

**JAMES BLAIR, JR.**                                                                      **PLAINTIFF**

 **v.**                                                      **CIVIL ACTION NO.  5:16-CV-P35-TBR**

**LADONNA L. THOMPSON** *et al.*                                          **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

This is a *pro se* civil rights action brought by a convicted prisoner pursuant to 42 U.S.C. § 1983.  The Court has granted Plaintiff James Blair, Jr., leave to proceed *in forma pauperis*. This matter is before the Court upon a motion by Plaintiff for an extension of time (DN 8) and for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).  For the reasons set forth below, the action will be dismissed.

### I. PROCEDURAL HISTORY

Plaintiff is currently incarcerated at Kentucky State Penitentiary (KSP).  On March 14, 2016, Plaintiff initiated this action by filing a document titled "Motion for Issuance of Warrant of Seizure of Plaintiff's Personal Properties" (DN 1).  On August 2, 2016, the Court entered an Order directing Plaintiff to file a complaint on a Court-supplied 42 U.S.C. § 1983 form and to submit a completed summons for each named Defendant (DN 7).  On August 31, 2016, Plaintiff filed a motion for an extension of time to comply with this Order (DN 8).  **IT IS HEREBY ORDERED** that this motion is **GRANTED**.

Plaintiff has now filed both a 26-page complaint (DN 9) and an amended complaint (DN 13).  It is these pleadings that are now before the Court for screening.

## II. SUMMARY OF COMPLAINTS

In his complaint, Plaintiff names ten state officials as Defendants and sues them in both their official and individual capacities.  These ten individuals are LaDonna Thompson, Randy L. White, John Dunn, Melissa Gibbs, Damien Latham, Joseph Morris, Daniel Smith, Melissa L. Bendler/Crick, Harry Christopher Vinson, and Darime Ellis.  As relief for the various constitutional violations Plaintiff alleges Defendants committed, Plaintiff seeks compensatory and punitive damages and injunctive relief.

In Plaintiff's amended complaint (DN 13), he claims that various KSP officials read other inmates' incoming legal mail and "disassemble" it before giving it to the inmate to whom it is addressed.

## III. LEGAL STANDARD

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A.  Under § 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the Court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d at 608.

 "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).  "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  "However, while liberal, this

standard of review does require more than the bare assertion of legal conclusions." *Columbia Natural Res., Inc.* v. *Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995). The court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## IV. ANALYSIS

"Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635 (1980). "[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

### A. Individual-Capacity Claims

A plaintiff bringing an individual-capacity claim under § 1983 "seek[s] to impose individual liability upon a government officer for actions taken under color of state law." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). To sufficiently plead a § 1983 claim, a plaintiff must allege that

3

a defendant personally "caused the deprivation of a federal right." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

### 1. LaDonna Thompson

Plaintiff first states that Defendant Thompson is the Kentucky Department of Corrections (KDOC) Commissioner. He alleges that she violated his First and Fourteenth Amendment rights by "repetitiously" denying Plaintiff "the lawful entitlement to appeal disciplinary conviction(s) to the office of the Commonwealth." Plaintiff also claims that Defendant Thompson violated specific Kentucky statutes, Kentucky constitutional amendments, federal civil rights statutes, and the "International Treaty on Human Rights," and that her actions constitute "treason" and have lead "to the open practice of anarchy."

With regard to Plaintiff's first claim, several courts, including the Sixth Circuit, have held that administrative appeals are not an element of the due process rights afforded inmates, even when such are provided for by state law or regulations. *See, e.g.*, *Boles v. Weist*, No. 87-1862, 1988 U.S. App. LEXIS 7942, at *3 (6th Cir. 1998) ("Plaintiff does not have an inherent constitutional right to appeal his disciplinary conviction."); *Black v. Parke*, 4 F.3d 442, 447 (6th Cir. 1993) ("the procedural due process required before one may be deprived of a liberty interest is governed by federal constitutional law and not state law"); *Spruytte v. Walters*, 753 F.2d 498, 508 (6th Cir. 1985) (holding violation of state law does not by itself constitute deprivation of due process). *See also Lowe v. Sockey*, 36 F. App'x 353 (10th Cir. 2002) (finding state prisoner's allegations that prison officials lost his appeal of prison discipline hearing failed to state a due process violation claim since Fourteenth Amendment does not provide due process right to such an appeal); *Rizo v. Pugh*, No. 4:13cv1798, 2013 U.S. Dist. LEXIS 25997, at *11-12 (N.D. Ohio Feb. 26, 2013) (same); *Gresham v. Verville*, No. 2:10-cv-198, 2011 U.S. Dist. LEXIS 4906, at

*14 (W.D. Mich. Jan. 19, 2011) (citing *Boles v. Weist* for the holding that administrative appeals are not an element of the due process rights afforded inmates); *Platt v. Brockenborough*, 476 F. Supp. 2d 467, 470 (E.D. Pa. 2007) (holding prisoners have no constitutional right to appeal the decision of a disciplinary hearing); *Ainsworth v. Terhune*, No. C 02-2940 MMC, 2002 U.S. Dist. LEXIS 14772, at *7 (N.D. Cal. Aug. 8, 2002) (holding there is no constitutional right to a prison administrative appeal or grievance system); *Chance v. Compton*, 873 F. Supp. 82, 86 (W.D. Tenn. 1994) (right to appeal disciplinary convictions is not within the narrow set of due process rights enunciated by *Wolff v. McDonnell*, 418 U.S. 539 (1974)).

Plaintiff's other claims against Defendant Thompson are merely "bare assertions and legal conclusions." *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d at 1109.  And, as stated above, the Court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d at 19, or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d at 1169.

In addition, any alleged failures to comply with an administrative rule or policy do not themselves rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *McVeigh v. Bartlett*, No. 94-2347, 1995 U.S. App. LEXIS 9509, at *3 (6th Cir. Apr. 21, 1995) (holding failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest).  Thus, because Section 1983 is addressed to remedying violations of federal law, and not state law, Plaintiff's claims related to alleged failures to follow state policies do not state a § 1983 claim. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

Thus, for all these reasons, the Court finds that Plaintiff has failed to state an individual-capacity claim against Defendant Thompson.

### 2. Randy L. White

Plaintiff makes several allegations against Defendant White, the warden at KSP. Plaintiff first claims that Defendant White approved a KSP employee's refusal to release Plaintiff from administrative segregation, in violation of KDOC's written policies and procedures. Plaintiff also alleges that Defendant White "concurred with and unconstitutionally approved his administration's adjustment hearing conviction of finding [Plaintiff] guilty of . . . [being in possession of $20 or more . . . ." Plaintiff also alleges that Defendant White retaliated against him for expressing his personal opinion of Defendant White by initiating a criminal prosecution against him. Plaintiff further claims that Defendant White refused to comply with KDOC written policy and procedures regarding the KSP Special Management Unit and concurred with and approved his employees' refusal to comply with KDOC written policy related to such. Finally, Plaintiff states that Defendant White committed "anarchy and tyranny" by refusing to comply with KDOC policies and procedures.

First, as noted above, any alleged failures to comply with an administrative rule or policy do not themselves rise to the level of a constitutional violation.

In addition, to the extent that Plaintiff challenges Defendant White for his alleged refusal to release him from segregation and for his decision to uphold the disciplinary decision of an adjustment committee, his claims fall under the Due Process Clause of the Fourteenth Amendment. The Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for

determining when a prisoner's loss of liberty implicates a federally cognizable liberty interest protected by the Due Process Clause.   According to *Sandin*, a prisoner is entitled to the protections of due process only when a deprivation "will inevitably affect the duration of his sentence" or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995).  Because Plaintiff does not allege facts indicating that his placement in segregation was atypical and significant or that it will inevitably affect the duration of his sentence, Plaintiff fails to demonstrate that he suffered an infringement of a liberty interest protected by the Due Process Clause.   In addition, as explained above, Plaintiff has no constitutional right to appeal a disciplinary conviction.   Thus, the Court finds that Plaintiff has failed to state a Fourteenth Amendment claim upon which relief may be granted against when Defendant White.

Plaintiff also alleges that Defendant White retaliated against him "due to Plaintiff's expressed personal opinion" of Defendant White.  The Sixth Circuit has held that:

> A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two -- that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  Here, the Court finds Plaintiff's allegation of retaliation against Defendant White is vague and wholly conclusory. Plaintiff offers no factual allegations regarding the substance or date of his personal opinion or when and how Warden White became aware of it.  He also offers no evidence that Defendant White "initiated" a criminal charge against him based upon this alleged personal opinion, rather

than the conduct for which Plaintiff was charged.  Thus, the Court finds that Plaintiff has failed to state a First Amendment retaliation claim against Defendant White.

Based upon all the above, the Court concludes that Plaintiff has failed to state an individual-capacity claim against Defendant White.

### 3. Defendants John Dunn and Daniel Smith

Plaintiff alleges that Defendant Dunn, the KDOC ombudsman, "routinely violated" Plaintiff's constitutional rights . . . by his refusal to enforce [KDOC]'s written policies and procedures . . . in this particular case . . . the Inmate Grievance Procedure."  Plaintiff states that these violations occurred when Plaintiff made a specific written notice to Defendant Dunn and Defendant Dunn "ignored the Plaintiff's written notice and advised the violating source (specifically Defendant Daniel Smith) of Plaintiff's written notice to him."

Plaintiff alleges that Defendant Smith is the "institutional grievance coordinator."  He further alleges that Defendant Smith "made a routine of arbitrarily interrupting, disparaging, and/or restricting, disparaging and/or denying the constitutional exercise of Plaintiff's entitlements under the United States Constitution, the Universal Declaration of Human Rights, and the Constitution of Kentucky."  Plaintiff specifically alleges that Defendant Smith "interfered with, interrupted, and denied [his] free exercise of his entitlement to grieve . . .  by preventing [his] submitted prison grievance procedure from proceeding via the institutional avenue as avenue as assured per [KDOC]'s written . . . grievance procedure."  Plaintiff further alleges that on May 9, 2016, Defendant Smith "did retaliate against plaintiff by conducting a disciplinary report and/or interfering with and/or preventing with plaintiff's assured institutional grievance entitlement," when he learned that Plaintiff had submitted a letter of complaint against him to "the office of the State government."

The Court can find no constitutional claim in these allegations.  As explained above, any alleged failures to comply with an administrative rule or policy do not themselves rise to the level of a constitutional violation.

Further, Plaintiff has no due process right to file a prison grievance.  The courts have repeatedly held that there exists no constitutionally protected due process right to an effective prison grievance procedure.  *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569-70 (6th Cir. 2002).

In addition, as to Plaintiff's retaliation claim against Defendant Smith, the Court finds these allegations are not clear or specific enough to support such a claim.  Here, even if the Court assumes that Plaintiff was engaged in protected conduct when he complained about Defendant Smith, Plaintiff fails to allege any act from which the Court could plausibly infer a causal connection between his purportedly protected speech and the alleged retaliatory conduct.  *See, e.g., Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (finding that "conclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983'" (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *Walker v. Mohr*, 2016 U.S. Dist. LEXIS 123095, at *9-10 (S.D. Ohio Sept. 12, 2016) (holding that the plaintiff's statements that conduct tickets issued to him were motivated by his grievances were conclusory and not sufficiently specific to satisfy the pleading standard).  *Cf. Thomas v. Eby*, 481 F. 3d 434, 436 (6th Cir. 2007) (holding that allegations were sufficient to state a retaliation claim where the plaintiff alleged that a prisoner officer told him that she would "'teach [him] a lesson' for writing a grievance against another correction officer" while issuing a misconduct ticket.)

For these reasons, the Court finds that Plaintiff's individual-capacity claims against Defendants Dunn and Smith based upon the above allegations fail to state a claim upon which relief may be granted.

### 4. Melissa Gibbs

Plaintiff alleges that Defendant Gibbs, a "chief accountant," has committed acts of "confusing, miscalculating, and stealing funds from the Plaintiff's personal prison account without Plaintiff's expressed permission" in violation of his constitutional rights.

The alleged loss of Plaintiff's personal property does not give rise to a constitutional violation. The Supreme Court has held that where adequate remedies are provided by state law, the negligent or intentional loss or destruction of personal property does not state a claim cognizable under the Due Process Clause of the Fourteenth Amendment. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). In order to assert a constitutional claim for deprivation of property, a plaintiff must allege that the state post-deprivation procedures are inadequate to remedy the deprivation. *See Parratt v. Taylor*, 451 U.S. at 543-44. The law of this Circuit is in accord. For example, in *Vicory v. Walton*, 721 F.2d 1062, 1066 (6th Cir. 1983), the court held that "in § 1983 damage suits claiming the deprivation of a property interest without procedural due process of law, the plaintiff must plead and prove that state remedies for redressing the wrong are inadequate." The Sixth Circuit has found that Kentucky's statutory remedy for such losses is adequate within the meaning of *Parratt*. *See Wagner v. Higgins*, 754 F.2d 186, 191-92 (6th Cir. 1985).

For these reasons, the Court finds that Plaintiff has failed to state an individual-capacity claim against Defendant Gibbs.

### 5. Melissa L. Bendler/Crick

Plaintiff alleges that Defendant Crick, a corrections officer at KSP, harassed him. Plaintiff specifically alleges that she violated KDOC policies and procedures by conducting a private and unauthorized search of a prison cell not yet assigned to Plaintiff on one occasion and "vindictively persecuted Plaintiff for the content of the administratively unassigned prison cell." Plaintiff also alleges that Defendant Crick "did not wash [his] dirty laundry prior to storing it, but did empty [his] dirty laundry net bag into a storage bin with [his] clean clothing . . . vindictively causing [his] entire storage of personal clothing and material products to stink."

With regard to the cell search, the Supreme Court has held that prisoners do not have a legitimate expectation of privacy in their prison cells, and therefore, the Fourth Amendment's protections are unavailable to prisoners. *Hudson v. Palmer*, 468 U.S. 517, 530 (1984). In addition, the Sixth Circuit has held that "the single search of a prisoner's cubicle does not rise to the level of an Eighth Amendment violation." *Tate v. Campbell*, 85 F. App'x 413, 417 (6th Cir. 2003). *See also Vigliotto v. Terry*, 873 F.2d 1201 (9th Cir. 1989) (holding that a single cell search is generally insufficient to constitute an Eighth Amendment violation). Thus, because Plaintiff has only alleged one unauthorized cell search by Defendant Crick, the Court finds that Plaintiff has failed to state a claim of constitutional dimensions with with regard to the search.

Plaintiff also claims that Defendant Crick "vindictively persecuted Plaintiff for the content of the administratively unassigned prison cell." Because there are no facts accompanying this allegation, the Court must analyze it as a general claim of harassment. "[I]t has long been established that a prison guard's verbal abuse or general harassment of an inmate does not violate the Eighth Amendment." *George v. Ballard*, 2017 U.S. Dist. LEXIS 2564, at *8 (E.D. Ky. Jan. 9, 2017). This is because "[n]ot every unpleasant experience a prisoner might

endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987).

This same reasoning likewise applies to Plaintiff's claims that Defendant Crick harassed him by placing his dirty laundry with his clean laundry on three occasions over a two-year period.   In *Johnson v. Dellatifa*, the Sixth Circuit found that allegations of similar acts of harassment by a correctional officer including continuously banging on and kicking the plaintiff's cell door, throwing his food trays so hard that the top came off, growling and snarling at the plaintiff, and smearing the plaintiff's window to prevent him from seeing out of it failed to establish an Eighth Amendment violation.   357 F.3d at 545-46 (6th Cir. 2004).   Indeed, the *Johnson* court ultimately concluded that the type of harassment described by plaintiff did not constitute the type of infliction of pain that the Eighth Amendment prohibits.   *Id.   See also Smith v. Fatoki*, No. 1:16CV246 ACL, 2016 U.S. Dist. LEXIS 169026, at *7 (E.D. Mo. Dec. 7, 2016) (holding that allegations of harassment including that defendants tried to trip the plaintiff, slammed him against a door, threw his laundry bag on the floor, and allowed other inmates to use the telephone failed to state a constitutional claim).   Thus, this Court also finds that Plaintiff's allegation of harassment based upon Defendant Crick's placement of his dirty laundry with his clean laundry fails to state a claim upon which relief may be granted.

Accordingly, for all of the above reasons, the Court concludes that Plaintiff has failed to state an individual-capacity claim against Defendant Crick.

### 6. Defendants Harry Christopher Vinson

Plaintiff alleges that Defendant Vinson violated Plaintiff's constitutional rights by "arbitrarily steal[ing] the personal properties of those being retained by the state government." Plaintiff also alleges that Defendant Vinson violated Plaintiff's constitutional rights by denying

Plaintiff access to his legal materials while he was placed in the KSP Special Management Unit (SMU).  Plaintiff further alleges that Defendant Vinson refused to allow Plaintiff any of the "allowable personal properties authorized" in the SMU.  Finally, Plaintiff alleges that Defendant Vinson stole some of his "personal legal documents, personal photos, and legal case files" while in possession of Plaintiff's property.

With regard to Plaintiff's allegations that Defendant Vinson stole personal property from him, as set forth above, the Supreme Court has held that where adequate remedies are provided by state law, the negligent or intentional loss or destruction of personal property does not state a claim cognizable under the Due Process Clause of the Fourteenth Amendment.  *Hudson v. Palmer*, 468 U.S. at 533 (1984); *Parratt v. Taylor*, 451 U.S. 527 (1981).  Thus, because Plaintiff does allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property, Plaintiff fails to state a claim for such against Defendant Vinson under the Due Process Clause.

With regard to Plaintiff's allegations against Defendant Vinson asserting the denial of access to legal materials, the Court finds that these allegations also fail to state a cognizable claim under § 1983.  Indeed, an indigent prisoner's constitutional right to legal resources and materials is not without limit.  In order to state a viable claim for interference with  access  to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim.  *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

Here, Plaintiff has not alleged that the lack of access to his legal materials during the time he spent in disciplinary segregation actually caused injury to a non-frivolous legal claim.  More specifically, he has not suggested that he was prevented from filing a non-frivolous legal claim challenging his conviction, that a non-frivolous claim was lost or rejected, or that the presentation of such a claim is currently being prevented.  Accordingly, the Court finds that Plaintiff has failed to allege a cognizable constitutional claim against Defendant Vinson arising from his lack of access to his legal materials.

For all of these reasons, the Court finds that Plaintiff has failed to state an individual-capacity claim against Defendant Vinson.

### 7. **Darime Ellis**

Plaintiff alleges that Defendant Ellis violated his constitutional rights by "ignoring and refusing Plaintiff's entitlement to fully exercise his equal, unhindered right to the state prison facility's law library to conduct legal research and/or litigation.  Plaintiff also alleges that on or around March 29, 2016, Defendant Ellis denied him equal time and equal opportunities to conduct legal research "as every other person retained by the people of this commonwealth state of Kentucky and citizen of the United States of America."

In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court recognized a prisoner's fundamental right of access to the courts.  However, *Bounds* did not create an abstract, free-standing right to a law library, litigation tools, or legal assistance.  *Lewis v. Casey*, 518 U.S. at 351. Rather, as explained above, to state a claim, an inmate must show that any shortcomings in the library, litigation tools, or legal assistance caused actual injury in his pursuit of a legal claim.  *Lewis*, 518 U.S. at 351; *Talley-Bey*, 168 F.3d at 886; *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Pilgrim v. Littlefield*, 92 F.3d at 416; *Walker v. Mintzes*, 771 F.2d 920, 932 (6th

Cir. 1985). Thus, because Plaintiff has not made a specific claim that he was adversely affected or that the litigation was prejudiced by his lack of access to the law library, this allegation against Defendant Ellis fails to state a claim of constitutional dimensions.

In addition, although it is unclear to the Court whether Plaintiff is attempting to state an equal protection claim against Defendant Ellis based upon his alleged actions on March 29, 2016, the Court finds that such a claim would also fail.   A Fourteenth Amendment equal protection claim must allege "discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cty., Ohio*, 430 F.3d 783, 788 (6th Cir. 2005).  Here, Plaintiff does not allege that Defendant Ellis's actions have burdened a fundamental right or that Plaintiff is the member of a suspect class. Instead, Plaintiff's equal protection claim rests upon a "class of one" theory.  To succeed under this theory, a plaintiff must show that he was treated differently than others similarly situated and either that "the challenged action was motivated by animus or ill-will" or that "the differential treatment [he was] subjected to is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the [Defendant]'s actions were irrational." *Id*.

Plaintiff's broad, nonspecific statements regarding other inmates and citizens and their alleged access to legal materials and/or the law library are insufficient to satisfy the pleading requirement.  *See, e.g.*, *Bertovich v. Vill. of Valley View, Ohio*, 431 F. App'x 455, 458 (6th Cir. 2011) (holding that dismissal of an equal protection claim was appropriate under Fed. R. Civ. P. 12(b)(6) where the plaintiff's complaint "does not point to any individual who was treated differently"); *Tyson v. Nixon*, No. 4:10-CV-1051, 2010 U.S. Dist. LEXIS 89848, at *2 (E.D.

Mo. Aug. 31, 2010) (holding that equal protection allegations were conclusory where "plaintiff does not cite to any particular female prisoner who was subjected to different treatment than plaintiff or any other male sex offender"); *Adams v. Thompson*, No. 3:07-3884, 2008 U.S. Dist. LEXIS 118540, at *4 (D.S.C. Dec. 19, 2008) (noting that a plaintiff could not allege an equal protection violation simply by "claim[ing] that other inmates who committed greater disciplinary offenses improved their custody status sooner than he did" where plaintiff "has not provided the names of inmates that he believes were treated more favorably or provided sufficient information to show that they were similarly-situated to him").

Thus, for these reasons, the Court finds that Plaintiff has failed to state individual-capacity claim against Defendant Ellis.

### 8. Damien Latham

Plaintiff alleges that Defendant Latham violated his constitutional right not to be retaliated against by ordering two of his co-workers "to conduct a cell search on the plaintiff because the plaintiff suggested that he, as assigned cellhouse officer, passout the anticipated prisoner incoming mail."

As stated above, the Sixth Circuit has held that:

A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two -- that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

Here, the Court finds that Plaintiff's allegation fails to state a retaliation claim against Defendant Latham.  First, the Court is unable to conclude that Plaintiff was engaged in protected conduct when he asked that a specific officer distribute the incoming prisoner mail.  Second, the

Sixth Circuit has held that a single search of an inmate's living cubicle and forty-five minute restriction to a segregation cell would not deter a person of ordinary firmness from exercising his constitutional rights. *Tate v. Campbell*, 85 F. App'x 413, 417 (6th Cir. 2003).

Thus, the Court concludes that Plaintiff has failed to state an individual-capacity claim against Defendant Latham.

### 9. Joseph Morris

Plaintiff alleges that Defendant Morris violated his Fourth and Fourteenth Amendment rights "when he vindictively refused to simply view the personal properties of the plaintiff's, which plaintiff addressed to him (defendant Morris) and which was made aware by plaintiff was not what his charges professed the items to be." The Court finds that this allegation fails to state a cognizable constitutional claim against Defendant Morris in his individual-capacity.

### B. Conspiracy Claims

Throughout his 26-page complaint, Plaintiff also makes various claims of "conspiracy." For example, he alleges that Defendants Thompson, Dunn, and Smith conspired to carry out "acts of oppressions, intimidations, and disparagements." He also alleges that on numerous occasions from 2015-2016, Defendant Smith and two or more individuals "conspired to oppress, threaten, or intimidate plaintiff from the free unhindered exercise or enjoyment of rights or privileges secured to him by the constitution or laws of the United States." Plaintiff also alleges that, in August 2016, Defendants Vinson, Crick, and a non-defendant identified as "Oliver" "conspired to interfere, disparage and deny Plaintiff's free, unhindered practice of his religion by stealing, moving, and destroying Plaintiff's collections of his religious materials."

"A civil conspiracy under § 1983 . . . is 'an agreement between two or more persons to injure another by unlawful action.'" *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th. Cir.

2011) (quoting *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007)).  To set forth a conspiracy claim, a plaintiff must show that (1) a "single plan" existed; (2) defendants "shared in the general conspiratorial objective" to deprive the plaintiff of his constitutional rights; and (3) "an overt act was committed in furtherance of the conspiracy that caused [the plaintiff's] injury."  *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985).  In addition, to prevail on a § 1983 civil conspiracy claim, the plaintiff must show an underlying constitutional violation."  *Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 462 (6th Cir. 2011).

With regard to Plaintiff's general claims of conspiracy against Defendants Thompson, Dunn, and Smith, the Court finds that Plaintiff has failed to state a claim.  This is because Plaintiff has only set forth vague assertions and legal conclusions.  As noted above, the court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d at 19, or to create a claim for a plaintiff.  *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d at 1169.  To allow these claims to proceed, the Court would be required to do both, and it declines to do so.

With regard to Plaintiff's conspiracy claim based upon the alleged confiscation and destruction of religious materials, the Court finds that Plaintiff has failed to show an underlying constitutional violation.  While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion.  *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted).  However, to establish that this right has been violated, Plaintiff must allege that: (1) the belief or practice  he seeks to protect is religious within his own "scheme of things;" (2) his belief is sincerely held; and (3) Defendant's behavior infringes upon this practice or belief.  *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987).  S*ee also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same).

Only if the prisoner makes this threshold showing of a sincerely held religious belief will the Court consider "whether the challenged practice of the prison officials infringes on the religious belief . . . ." *Kent*, 821 F.2d at 1224-25.  A practice will not be considered to infringe on a prisoner's free exercise unless it "places[s] a substantial burden on the observation of a central religious belief or practice . . . ." *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989).  "[T]he Supreme Court has made clear that the 'substantial burden' hurdle is high." *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007).  "[A] 'substantial burden" is a difficult threshold to cross." *Id.* at 736.  Further, "a 'substantial burden' must place more than an inconvenience on religious exercise." *Id.* at 739 (quoting *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir.2004)). A particular government action will not be considered a substantial burden merely because it "may make [the] religious exercise more expensive or difficult . . . ." *Living Water Church of God*, 258 F. App'x at 739.

Here, the scope and nature of Plaintiff's religious belief is not apparent from the complaint.  Plaintiff's complaint also fails to show how Defendants Vinson's and Crick's alleged actions regarding his religious materials substantially burdened the observation of a central religious belief or practice.  For these reasons, the Court finds that Plaintiff has failed to state an underlying First Amendment claim with regard to his religious materials.

Based upon the above, the Court will dismiss Plaintiff's conspiracy claims for failure to state a claim upon which relief may be granted.

### C. Legal Mail Claim

In his amended complaint (DN 13), Plaintiff alleges that on September 19, 2016, he observed KSP officials read another prisoner's incoming legal mail to gain information about the

prisoner's "ongoing legal litigations and personal knowledge of the employees and co-workers named in those litigated action."  Plaintiff also contends that KSP officials force inmates to stand in the heat while officials read their legal mail and then "disassemble the legal package from the courts prior to actually giving it to the addressed prisoner."  Plaintiff then states that these alleged actions prompted him to refuse his legal mail.

The Court first notes that because Plaintiff is proceeding *pro se*, he does not have standing to bring a claim on behalf of another prisoner.  *See* 28 U.S.C. § 1654.  *See also Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008) (holding that a *pro se* prisoner lacks standing to assert the constitutional rights of other prisoners); *Marcum v. Jones*, No. 1:06-cv-108, 2006 U.S. Dist. LEXIS 12004, at *4 (S.D. Ohio Mar. 3, 2006) (and cases cited therein) (holding that a *pro se* inmate "may bring his own claims to federal court without counsel, but not the claims of others").

In addition, Plaintiff does not allege that any actual injury to his own litigation was caused by these actions.  In the Sixth Circuit, the law has not established that reading properly marked legal mail "in [an] inmate['s] presence violates constitutional rights in and of itself."  *Lavado v. Keohane*, 992 F.2d 601, 609 (6th Cir. 1993).  Indeed, the Sixth Circuit has specifically held that in order to state a claim for interference with access to the courts based upon the opening of legal mail, a plaintiff must allege prejudice to pending litigation.  *Lewis v. Grider*, 27 F. App'x 282, 283 (6th Cir. 2001).  *See also Stanley v. Vining*, 602 F.3d 767, 770 (6th Cir. 2010) (collecting cases).

Here, if any injury occurred it was caused by Plaintiff's own decision to refuse his mail. Thus, the Court finds that Plaintiff has failed to state a claim upon which relief may be granted with regard to his legal mail.

### D. Official-Capacity Claims

#### 1. Monetary Relief

As stated above**,** Plaintiff also sues all Defendants in their official capacities.  Official-capacity claims for damages against state officials and all claims against a state and its agencies are barred by the Eleventh Amendment to the United States Constitution.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Kentucky v. Graham*, 473 U.S. at 169 (1985).  *See also Grider v. City of Russell Springs, Ky.*, No. 1:05CV137-M, 2006 U.S. Dist. LEXIS 8211, 2006 WL 522213, at *1 (W.D. Ky. Mar. 1, 2006) (finding official-capacity claims for damages against Kentucky State Police trooper barred by Eleventh Amendment).  In addition, employees or officials of a state who are sued in their official capacities for money damages are not "persons" subject to suit under § 1983.  *Will v. Mich. Dep't of State Police*, 491 U.S. at 71 (1989).  Accordingly, to the extent that Plaintiff seeks money damages from the named Defendants in their official capacities, he fails to allege cognizable claims under § 1983.

#### 2. Injunctive Relief

Plaintiff also seeks several forms of injunctive relief.  These include requiring KDOC officials to implement a training course for adjustment hearing officers; that KDOC hearing officers be fined if they fail to follow established KDOC policy and procedures; that KDOC be required to allow appeals to be taken beyond the warden to the KDOC Commissioner; that KDOC implement various policies related to prisoners' retained food items; and that KDOC be required to audio record all institutional grievance committee hearings and preserve the audio record for two years.

Although Plaintiff's requests for injunctive relief could theoretically trigger the exception to the Eleventh Amendment created by *Ex Parte Young*, 209 U.S. 123 (1908), which allows a

litigant to seek injunctive relief from a state officer in certain circumstances, Plaintiff's requests for injunctive relief fail because the Court has not allowed any of Plaintiff's underlying claims to proceed.

## V. CONCLUSION

For the foregoing reasons, this action will be dismissed by separate Order.

Date:

cc:     Plaintiff, *pro se*
        Defendants
        General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4413.011